UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State Farm Life Insurance Company, | File No. 20-cv-2120 (ECT/HB) |
| Plaintiff, | |
| v. | |
| Dustin K. Youngs; S.A.G., a minor;<br>Nancy Geib, solely in her role as<br>mother/guardian of S.A.G.; and Deborah<br>Cunningham, | **OPINION AND ORDER** |
| Defendants. | |

Barbara P. Berens, Carrie L. Zochert, and Erin K. Fogarty Lisle, Berens & Miller, P.A., Minneapolis, MN, for Plaintiff State Farm Life Insurance Company.

Brian F. Kidwell, Kidwell Law Office, St. Louis Park, MN, for Defendant Dustin K. Youngs.

Elizabeth C. Henry and Francis J. Rondoni, Chestnut Cambronne PA, Minneapolis, MN, for Defendants Nancy Geib and Deborah Cunningham.

---

This interpleader case involves competing claims to life-insurance proceeds. There are six pending motions. Plaintiff State Farm Life Insurance Company filed one of the motions. It has moved to deposit the policy proceeds into the court registry pending adjudication of the competing claims. The motion is unopposed and well-supported. It will be granted. Defendant Dustin K. Youngs filed the other five motions. In the order they will be addressed, Youngs has moved: (1) for judgment on the pleadings; (2) for Rule 11 sanctions against co-Defendant Deborah Cunningham and her counsel; (3) for the

appointment of an independent guardian ad litem for minor co-Defendant, S.A.G., in place of S.A.G.'s mother, Nancy Geib; (4) to disqualify counsel from jointly representing Deborah Cunningham and Nancy Geib (as representative of S.A.G.); and (5) to strike the answer filed on S.A.G.'s behalf. Youngs's motions will be denied because they lack legal and factual support.

*Undisputed background facts.* The basic facts are undisputed. On January 14, 2008, State Farm issued a $250,000 life insurance policy to Robert J. Cunningham. Compl. ¶¶ 8–9 [ECF No. 1], Exs. A, B [ECF No. 5 at 1–19].[1] Originally, Robert named his spouse, Deborah Cunningham, as the primary beneficiary, and he named his nephew, Dustin Youngs, as the successor beneficiary. Compl. ¶¶ 2, 5, 10, Ex. B [ECF No. 5 at 16]. On January 2, 2017, Robert executed a change-of-beneficiary form in which he listed only Youngs and his minor niece, S.A.G., as primary beneficiaries. Compl. ¶ 11, Ex. C [ECF No. 5 at 20]. Robert identified no successor beneficiary. *Id.*, Ex. C. In other words, Robert did not identify Deborah as a primary or successor beneficiary on this form. *Id.* Robert's change-of-beneficiary form was witnessed by Nancy Geib. *Id.* Geib is Deborah's sister and S.A.G.'s mother. Geib Pleading at 1, Ex. A [ECF Nos. 24, 24-1].[2]

*Disputed issue and facts.* The central issue in this case is whether Robert's January 2017 change-of-beneficiary form controls the payment of benefits. If it does, then Youngs

---

[1]     Robert's life-insurance application is attached to the Complaint separately from the policy as Exhibit B. Compl. ¶ 10, Ex. B. However, the application is "a part of" the policy. *Id.*, Ex. A at 7 (defining "Application").

[2]     For ease of reading, each Defendant's operative responsive pleading will be referred to simply as "Pleading," accompanied by reference to the appropriate Defendant.

and S.A.G. would be entitled to receive the benefits, and Deborah would receive nothing. On this question, Youngs is on one side. Deborah, Geib, and S.A.G. are on the other. Youngs alleges the form controls and "that he and S.A.G. are the rightful primary beneficiaries" and should "share equally" in the policy's $250,000 death benefit. Youngs Pleading at 3, ¶ 3 [ECF No. 16]. Deborah and Geib (speaking for S.A.G. as her legal representative) say the change-of-beneficiary form does not reflect Robert's intent because his identification of Youngs and S.A.G. as primary beneficiaries resulted from a "scrivener's error." Cunningham Pleading ¶ 11 [ECF No. 13]; Geib Pleading ¶ 11. Deborah and Geib both allege that Robert intended Deborah to remain the primary beneficiary under the policy and intended only that Youngs and S.A.G. be successor beneficiaries. Cunningham Pleading ¶¶ 25–26; Geib Pleading ¶¶ 15, 22. Deborah and Geib also allege that Youngs and S.A.G. "are fully aware" that Robert did not intend to name them as primary beneficiaries. Cunningham Pleading ¶ 11; Geib Pleading ¶ 11. Geib alleges that she is responsible for the scrivener's error. Geib Pleading ¶ 22. Geib provides background regarding her error in an assignment document attached as an exhibit to her answer. *Id.*, Ex. A. The document memorializes Geib's assignment "as [S.A.G.'s] mother and legal guardian" of S.A.G.'s interests "as a purported 50% beneficiary" of the policy to Deborah, and provides the following explanation of Geib's error, evidently to justify the assignment:

> [Geib] is a State Farm Insurance agent who prepared a change of beneficiary for [Robert] on January 2, 2017, made a scrivener's error and mistakenly identified [Robert's] nephew and niece (my daughter S.A.G.) in the box on the beneficiary form as primary beneficiaries instead of the box to identify

them as successor beneficiaries.  [Robert] intended his wife, Deborah Cunningham, to remain the sole primary beneficiary of his Policy.

*Id.*

*Subject-matter jurisdiction.*  There is subject-matter jurisdiction over this case. State Farm brought the case under Federal Rule of Civil Procedure 22 and alleges there is diversity jurisdiction under 28 U.S.C. § 1332.  *See* Compl. ¶ 6.  "[T]his means that the amount in controversy must exceed $75,000, exclusive of interest and costs, and that it is [State Farm's] citizenship that must be diverse from that of the claimants."  7 Mary Kay Kane, *Federal Practice and Procedure* § 1703 (3d ed. Apr. 2021 Update); *see AmGuard Ins. Co. v. SG Patel and Sons II LLC*, ___ F.3d ___, 2021 WL 2303045, at *4 (4th Cir. June 7, 2021) ("Typically, plaintiffs invoke rule interpleader under a court's diversity jurisdiction, which requires complete diversity of citizenship between all plaintiffs and defendants and an amount in controversy exceeding $75,000.").  Here, the value of the disputed policy benefits plainly exceeds $75,000, and there is complete diversity in the relevant sense.  State Farm is an Illinois citizen, Compl. ¶ 1, and each of the claimants seems to acknowledge being a Minnesota citizen, *id.* ¶¶ 2–5; Youngs Pleading at 1, ¶ 2; Geib Pleading ¶¶ 3–4; Cunningham Pleading ¶ 5.

*State Farm's motion to deposit the policy proceeds.*  State Farm's motion is straightforward, well-supported, and unopposed.  It seeks an order directing it to deposit the policy proceeds of $250,147.26 (the death benefit plus accrued interest) and interest to the date of issuance into the court registry pending adjudication of the competing claims. ECF No. 68.  A party seeking leave to deposit money in the court registry must file, in

addition to a motion, a completed "Registry Deposit Information" form and a proposed

order. L.R. 67.1(b)(1). State Farm has filed these documents. ECF Nos. 68, 68-1, 73. No

party opposes the motion. *See* ECF No. 72. The motion will therefore be granted.

*Youngs's motion for judgment on the pleadings.* Youngs seeks judgment on the

pleadings in his and S.A.G.'s favor under Federal Rule of Civil Procedure 12(c).

"Judgment on the pleadings is appropriate where no material issue of fact remains to be

resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells*

*Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018). A motion for judgment on the

pleadings is assessed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ashley*

*Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under that standard, a court must

accept as true all of the factual allegations in the relevant pleading and draw all reasonable

inferences in the pleading party's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th

Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they

must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A pleading's allegations must "state

a claim to relief that is plausible on its face." *Id.* at 570.[3]

---

[3]     Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6)
motion into one for summary judgment, but not when the documents are "necessarily
embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir.
2017) (citations omitted). Among the categories of documents necessarily embraced by
the pleadings are "exhibits attached to the complaint whose authenticity is unquestioned."
*Id.* (internal quotation marks and citations omitted). Here, the Parties cite exhibits attached
to pleadings, and no party has questioned the exhibits' authenticity. *See* ECF No. 5
(exhibits A–F to State Farm's complaint); ECF No. 13-1 (exhibit to Cunningham
Pleading); ECF No. 24-1 (exhibit to Geib Pleading). Therefore, consideration of these

The Parties agree that Minnesota law governs their competing claims, but they disagree about how to evaluate Deborah's claim to the policy benefits—*i.e.*, her claim that she is the primary beneficiary by virtue of the original (January 2008) beneficiary designation and that the second (January 2017) change-of-beneficiary form didn't change that. Youngs characterizes Deborah's position as "a classic short-hand articulation of the legal basis for a claim for reformation of a written instrument based upon a mutual mistake." Mem. in Supp. at 5 [ECF No. 28]. He argues that Deborah lacks "standing" to make this argument and that, regardless, she cannot establish a mutual mistake. *Id.* at 6–16. Deborah argues that her claim is governed by Minnesota cases adjudicating disputes over the validity of beneficiary designation forms and that the mutual-mistake doctrine doesn't apply. *See* Deborah's Opp'n Mem. at 6–18 [ECF No. 62].

Minnesota law allows a first-named beneficiary of a life-insurance policy to challenge "whether there has been an effective change of beneficiary." *Gwin v. Gappa*, 394 N.W.2d 530, 534 (Minn. Ct. App. 1986). That was precisely the situation in *Gwin*. There, the decedent, Dale Gappa, originally named his then-wife, Jean Gappa, as beneficiary of a life insurance policy. *Id.* at 532. Dale and Jean divorced, and Dale subsequently executed a change-of-beneficiary form naming his "close friend," Delores Gwin, beneficiary. *Id.* As the court summarized the dispute:

> All the parties agreed that the change of beneficiary form had been signed by the insured. The completed form designated Gwin as the primary beneficiary. However, there was conflicting testimony about whether the designated beneficiary

---

materials will not transform Youngs's motion for judgment on the pleadings into one for summary judgment.

> portion of the form was in the insured's handwriting or another's.

*Id.* The trial court determined, following a non-jury trial, "that the insured's intent was unclear and ambiguous and concluded that Jean Gappa was entitled to the proceeds from the insurance policy." *Id.* at 533. The Minnesota Court of Appeals affirmed, explaining that "while the insured may have intended to change beneficiaries, he did not clearly demonstrate whom he intended to designate as beneficiary." *Id.* at 534.

Equitable rules govern the adjudication of this issue. *See Metro. Life Ins. Co. v. Belland*, 583 N.W.2d 592, 593 (Minn. Ct. App. 1998); *Minn. Mut. Life Ins. Co. v. Bunde*, 555 N.W.2d 545, 547–48 (Minn. Ct. App. 1996) (explaining that in a beneficiary dispute "where the insurer is permitted to pay the policy proceeds into court and be dismissed from the case," the action "becomes a suit in equity"); *Brown v. Agin*, 109 N.W.2d 147, 150 (Minn. 1961) (stating "equitable principles govern in regard to the interpretation of change-of-beneficiary clauses" in interpleader actions). When an insured causes a beneficiary to be named in a beneficiary designation or change-of-beneficiary form executed in compliance with the applicable policy, the form "is prima facie evidence that the beneficiary so named is entitled to the proceeds thereof at the death of the insured[.]" *Christenson v. Madson*, 149 N.W. 288, 289 (Minn. 1914); *see also Belland*, 583 N.W.2d at 592 (recognizing that Minnesota courts generally "give effect to a change-of-beneficiary form when an insured has executed the form in compliance with the insurer's express requirements"). When that designation is challenged, a court applying Minnesota law must determine whether the insured intended to change the beneficiary. *Larsen v. Nw. Nat. Life*

*Ins. Co.*, 463 N.W.2d 777, 780 (Minn. Ct. App. 1990).[4]  A claimant who challenges an insured's designation of another as beneficiary must show that the insured's intent to name the claimant (and not another) as beneficiary was clear and unambiguous.  *Gwin*, 394 N.W.2d at 534 ("If there exists any confusion as to the insured's intent or conflicting expressions of intent, then the named beneficiary should be entitled to the proceeds." (quoting *Lemke v. Schwarz*, 286 N.W.2d 693, 696 (Minn. 1979))); *Harrell v. Cederberg*, No. 19-cv-251 (MJD/ECW), 2020 WL 5407956, at *6 (D. Minn. Sep. 9, 2020); *Strauss v. Kitsmiller*, No. A18-1016, 2019 WL 664525, at *2 (Minn. Ct. App. Feb. 19, 2019); *Johnson v. Johnson*, No. C1-00-30, 2000 WL 781370, at *3 (Minn. Ct. App. June 20, 2000).

Deborah and Geib allege facts plausibly showing that Robert clearly and unambiguously did not intend to change the primary beneficiary of the policy from Deborah to Youngs and S.A.G.  They allege that Robert's designation of Youngs and S.A.G. as primary beneficiaries on the January 2017 change-of-beneficiary form resulted from Geib's mistake.  Cunningham Pleading ¶¶ 11, 15, 26; Geib Pleading ¶¶ 11, 22, Ex. A.  Deborah alleges that it "was [Robert's] intent and the document preparer's intent" that

---

[4]     The complete formulation of the test the Minnesota Supreme Court applied in *Larsen* requires a court to determine "(1) whether there was intent to change the beneficiary by the insured; and (2) whether the insured acted affirmatively or otherwise did substantially all possible to show intention whether or not she complied with policy change of beneficiary provisions." *Larsen*, 463 N.W.2d at 780.  The circumstances of this case do not seem to implicate the second element of this test.  No one suggests (yet) that the challenged change-of-beneficiary form did not comply with the policy.  In other words, if Robert intended to change the beneficiary from Deborah to Youngs and S.A.G., there is no dispute that he "did substantially all possible to show [that] intention." *Id.*

Deborah remain the primary beneficiary of the policy and that Youngs and S.A.G. be named as successor beneficiaries. Cunningham Pleading ¶ 26; *see* Geib Pleading ¶¶ 11, 22, Ex. A. Deborah alleges that Youngs "wrongfully has claimed a right to the policy proceeds in question despite the fact that [he] is aware or should be aware that he was to be named a successor beneficiary, and not a primary beneficiary over the wife and surviving spouse of the Decedent." Cunningham Pleading ¶ 27; *see* Geib Pleading ¶ 11. In other words, Deborah and Geib plausibly allege that Robert's intent conflicts with the designations made on the change-of-beneficiary form. Accepting these allegations as true and drawing all reasonable inferences in Deborah's favor, Deborah alleges a plausible claim to the proceeds of the life insurance policy.

Youngs characterizes Deborah's claim as one seeking reformation of a written instrument based on "mutual mistake" and argues that Deborah cannot show the presence of a mutual mistake, *see* Mem. in Supp. at 5–13, but there are two basic problems with this contention. *First*, Deborah doesn't allege a "mutual mistake." Under Minnesota law, a written instrument may be reformed when there is either a "mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn. 1980). Deborah does not allege that State Farm made a mistake or had anything to do with the error that (she alleges) resulted in the misidentification of Youngs and S.A.G. as primary beneficiaries. In other words, there was nothing "mutual" about the mistake. This makes sense. State Farm did not contract with Robert regarding the selection of beneficiaries. That was entirely up to

Robert.[5]  It might be different had Youngs cited cases either applying the mutual-mistake

doctrine to a case like this or suggesting that a mutual mistake must be shown before a

beneficiary designation may be challenged.  But he doesn't, and the doctrine just seems

inapt.  *Second*, accepting Youngs's arguments would logically preclude any challenge to a

beneficiary designation by someone other than an insured though Minnesota plainly

permits such challenges.  Youngs argues, for example, that Deborah "lacks standing"

because "reformation is available only to the original parties to the contract or instrument

and to those in privity with them."  *Id.* at 6.  According to Youngs, "[t]he parties to the

insurance contract that [Deborah] would have this court reform were [Robert], now

deceased, and State Farm."  *Id.*  In other words, persons who believe they are beneficiaries

under a life-insurance policy aren't parties to the policy, lack standing, and can't ever sue.

That conclusion can't be squared with *Gwin* and the many other cases in which Minnesota

courts have adjudicated challenges to beneficiary designations.[6]  Again, it might be

different if Youngs cited authority applying this "standing" rule to disputes between life-

---

[5]     Of course, State Farm and Robert contracted regarding *how* those persons would be
identified to State Farm, but that's not the issue here.

[6]     Youngs advances another argument that would have the same consequence.  He
argues that the "intervening rights" and "superior equities of Youngs and . . . S.A.G.[]"
preclude as a matter of law the reformation relief sought by [Deborah]."  Mem. in Supp. at
12–13.  But the only "intervening rights" Youngs identifies is the fact that he and S.A.G.
were identified as primary beneficiaries on the January 2017 change-of-beneficiary form.
*Id.*  If that were enough to preclude Deborah's claim, it would be enough to preclude any
claim by any would-be beneficiary who challenged a competing designation.

insurance claimants, but he doesn't. For all these reasons, then, Youngs's motion for judgment on the pleadings will be denied.[7]

*Youngs's motion for appointment of an independent guardian for S.A.G.* Pursuant to Rule 17(c)(2), Youngs seeks appointment of an independent guardian who would substitute for Geib and represent S.A.G.'s interests. ECF No. 39. Youngs says appointment of a special representative is necessary because Geib and S.A.G.'s interests conflict, making Geib an inadequate representative. *See* Mem. in Supp. at 12–15 [ECF No. 41]. The motion will be denied because the current record reveals no conflict in the relevant sense between Geib and S.A.G.

By its text, Rule 17(c)(2) requires a court to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor . . . who is unrepresented in an action." If a minor is represented, but the representative refuses to act or has interests that conflict with the minor's, then a court has the power to appoint a special representative. 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1570 (4th ed. Apr. 2021 Update); *see T.W. ex rel. Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997) ("Unless . . . the court finds the child's general representative to be inadequate, it should not allow the general representative to be bypassed by appointing a special representative to litigate on behalf of his ward.").

---

[7]     The denial of Youngs's motion for judgment on the pleadings means that Youngs's motion for Rule 11 sanctions against Deborah and her counsel must also be denied. The Rule 11 motion is based on the same arguments Youngs presented in support of his motion for judgment on the pleadings. *See generally* Mem. in Supp. [ECF No. 33]. Certainly in view of the Minnesota authorities cited here and by Deborah's counsel, the Rule 11 motion reflects unsatisfactory forethought.

Identifying the existence of a conflict appears to be a discretionary exercise, though common-sense principles guide the analysis. For example, a court need not order appointment of a special representative when "it is not yet clear that a conflict of interest exists" between a representative parent and child. *Jeffery v. O'Donnell*, 702 F. Supp. 513, 515 (M.D. Pa. 1987). If evidence is presented later showing a conflict, then a court may reconsider the issue. *Id.* at 516. A representative is not inadequate merely because she concedes a lack of merit in part or all of a ward's legal position. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 544 (M.D.N.C. 1996) ("There may well be solid reasons why the parent does not file an answer on the minor's behalf.").

As an example of a case applying these principles, *USAA Life Ins. Co. v. Doss*, No. 3:15-cv-93-J-34MCR, 2015 WL 6155892 (M.D. Fla. Oct. 19, 2015), is instructive. There, the insurer (USAA) brought an interpleader suit to resolve competing claims to life insurance benefits. *Id.* at *2. The insured (Mr. Doss) died by homicide. *Id.* His wife (Ms. Doss) was arrested and charged with the murder. *Id.* Ms. Doss was the sole beneficiary under the policy. *Id.* USAA alleged "that if Ms. Doss [was] prohibited from receiving the death benefit of the life insurance policy pursuant to [Florida's] slayer statute . . . the benefit would be payable to Mr. Doss's Estate and/or A.D.[,]" the couple's minor daughter. *Id.* Ms. Doss's mother was the personal representative of Mr. Doss's estate. *Id.* at *4. Initially, Ms. Doss's sister and her husband were A.D.'s guardians. *Id.* at *4. Though not entirely clear, the court seems to have concluded that the couple's potential interests in defending Ms. Doss and perhaps personally asserting a claim through Mr. Doss's estate, and their

close familial relationship with the personal representative of Mr. Doss's estate, risked conflicts that warranted appointment of a guardian ad litem to represent A.D. *Id.* at *4–5.

Applying these authorities to the current record, it is not apparent that Geib is pursuing an interest that conflicts with her daughter's in a way that makes Geib an inadequate representative. Geib has no claim to the policy proceeds, so she's not conflicted for that reason. That Geib lacks a competing claim goes a long way toward distinguishing this case from *Doss* and cases like it. No doubt Geib is an important witness in the case (perhaps the most important witness), and her account, if accepted as true, would undermine S.A.G.'s claim under the January 2017 change-of-beneficiary form. That might be a problem on a different record, but it isn't enough to show that Geib is inadequate to represent S.A.G.'s interests on this record. Considered alongside Geib's decision to assign any interest S.A.G. may have in the policy proceeds, ECF No. 24-1, the better take is that Geib reasonably does not believe her daughter has a viable claim. There's nothing inherently wrong with that. It might be different if the record included evidence tending to show that Geib's testimony is motivated by some interest that conflicts with S.A.G.'s. It's not difficult to imagine problematic hypotheticals. What if, for example, it turns out that Geib received a kickback from Deborah in consideration for assigning S.A.G.'s policy interests? What if Geib's account of her error is perjurious? The record doesn't show anything like these imagined scenarios, and the bottom line is that speculation and guesses about potential conflicts are not a sufficient basis to deprive Geib of her authority as a parent to represent S.A.G. in this case. Youngs's motion seeking appointment of an independent guardian for S.A.G. will be denied.

*Youngs's motion to disqualify counsel from representing Deborah and Geib.* Youngs's next motion is premised on his contention that Deborah and Geib are adversaries. Youngs asserts that Deborah has asserted a claim against Geib, making dual representation *per se* inappropriate under Rule 1.7 of the Minnesota Rules of Professional Conduct. Mem. in Supp. at 13–15 [ECF No. 46]. Alternatively, Youngs argues that "Geib is incapable of giving [the] informed consent" that Rule 1.7 requires for dual representation in the presence of a concurrent conflict of interest. Mem. in Supp. at 12–13. Youngs then relies on Rule 1.9 to argue that counsel's past representation of both Deborah and Geib means counsel should be disqualified from representing them both in this case. Mem. in Supp. at 14–15.

"A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quotations omitted). "When considering a motion to disqualify, a court must strike a balance between several competing considerations, including the unfettered practice of law, the judiciary's responsibility to ensure that the integrity of the profession is maintained, and striking a balance [between] the plaintiff's right to retain counsel of his or her choice against the opposing party's right to prepare and try a case without prejudice." *Le v. Wells Fargo Bank, N.A.*, No. 13-cv-1920 (SRN/JJK), 2014 WL 12600956, at *1 (D. Minn. Feb. 27, 2014) (quoting *Nesselrotte v. Allegheny Energy, Inc.*, Civil Action No. 06-01390, 2008 WL 2890832, at *4 (W.D. Pa. July 23, 2008) (citation omitted)). "The party moving to disqualify opposing counsel bears the burden of demonstrating that disqualification is required." *Id.* (citing *Olson v. Snap*

*Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998)). "Because . . . of the great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation." *Id.* (quoting *Richards v. Holsum Bakery, Inc.*, No. CV09-00418-PHX-MHM, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009) (quotations omitted)).

Rule 1.7 of the Minnesota Rules of Professional Conduct, made applicable here by D. Minn. LR 83.6(a), establishes a general rule prohibiting a lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest." Minn. R. Prof. Conduct 1.7(a). "A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one . . . client[] will be materially limited by the lawyer's responsibilities to another client[.]" *Id.* If a concurrent conflict exists, a lawyer may nonetheless represent a client provided: "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation . . . ; and (4) each affected client gives informed consent, confirmed in writing." Minn. R. Prof. Conduct 1.7(b).

Counsel's concurrent representation of Deborah and Geib does not violate Rule 1.7, so there is no basis to order disqualification. Deborah and Geib are not directly adverse. Their interests are aligned with respect to the policy proceeds that are the subject of this

case: each thinks Deborah is the rightful beneficiary. Youngs cites no evidence suggesting that Deborah and Geib's interests are not really aligned. Nor does Youngs cite authority suggesting that the theoretical possibility Deborah and Geib might have been adverse means they are adversaries for purposes of Rule 1.7. Youngs identifies no reason to think that counsel's representation of Deborah will materially limit their responsibilities to Geib and vice versa. If Deborah and Geib's interests were somehow adverse, counsel's representation of both concurrently would remain appropriate under Rule 1.7(b). With respect to this issue, Youngs's only argument is that Deborah has asserted a claim against Geib within the meaning of Rule 1.7(b)(3), making concurrent representation inappropriate. This is literally true. In her pleading responding to State Farm's interpleader complaint, Deborah demands judgment "against the Plaintiff and against Co-Defendants determining that [she] is entitled to all of the proceeds of said Policy." Cunningham Pleading ¶ 25. But the comments to Rule 1.7(b)(3) instruct that "[w]hether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding." Minn. R. Prof. Conduct 1.7, cmt. 17. Here, context shows that Deborah and Geib (as S.A.G.'s representative) are not really aligned against each other. They are defendants to an interpleader complaint. Neither brought suit against, nor seeks a result adverse to, the other. This is clear from Geib's responsive pleading. There, Geib "alleges affirmatively that . . . Youngs and S.A.G. were not to be primary beneficiaries of the policy in question" and that the policy proceeds "were intended by [Robert] to go to [Deborah]." Geib Pleading ¶¶ 11, 22. In no legal or practical sense

are Deborah and Geib aligned directly against each other.  Youngs's disqualification motion will be denied.[8]

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.      Plaintiff State Farm Life Insurance Company's Motion to Deposit Funds [ECF No. 68] is **GRANTED** as follows:

    a.      Within 30 days of this Order, Plaintiff shall deposit the Policy Benefit in the amount of $250,147.26, plus interest to the date of issuance, with the Clerk of Court;

    b.      These funds, which are being deposited pursuant to Federal Rule of Civil Procedure 67 and Local Rule 67.1, shall be deposited by the Clerk into the Disputed Ownership Fund ("DOF") established in the Court Registry Investment System ("CRIS") as soon as the business of the office allows, and the Clerk shall deposit these funds into an interest-bearing account. These funds so invested in the interest-bearing account shall remain on deposit until further order of this Court.  The Custodian shall deduct a miscellaneous schedule fee for the

---

[8]      Youngs filed his motion to strike the responsive pleading that Geib filed on S.A.G.'s behalf "in anticipation" that either his motion to appoint an independent guardian or his disqualification motion would be granted.  Mem. in Supp. at 1 [ECF No. 51].  Since both of those motions will be denied, Youngs's motion to strike will be denied too.

handling of those registry funds invested in interest-bearing accounts, as authorized by the Judicial Conference of the United States, of 10% of the income earned on an account and any subsequent deposit of new principal while invested in the CRIS.

2.   Defendant Dustin K. Youngs's Motion for Judgment on the Pleadings [ECF No. 25] is **DENIED**;

3.   Defendant Dustin K. Youngs's Motion for Sanctions [ECF No. 31] is **DENIED**;

4.   Defendant Dustin K. Youngs's Motion to Appoint Guardian ad Litem [ECF No. 39] is **DENIED**;

5.   Defendant Dustin K. Youngs's Motion to Disqualify Counsel [ECF No. 44] is **DENIED**; and

6.   Defendant Dustin K. Youngs's Motion to Strike Pleading [ECF No. 49] is **DENIED**.

Dated:  June 23, 2021                              s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court