UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State Farm Life Insurance Company, | File No. 20-cv-2120 (ECT/HB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Dustin K. Youngs; S.A.G., *a minor*; Nancy Geib, *solely in her role as mother/guardian of S.A.G.*; and Deborah Cunningham, | |
| Defendants. | |

Brian F. Kidwell, Kidwell Law Office, St. Louis Park, MN, for Defendant Dustin K. Youngs.

Elizabeth C. Henry and Francis J. Rondoni, Chestnut Cambronne P.A., Minneapolis, MN, for Defendants S.A.G., Nancy Geib, and Deborah Cunningham.

This interpleader action involves competing claims to life-insurance proceeds under a State Farm life insurance policy. The two remaining claimants are the insured's surviving spouse, Deborah Cunningham, and the insured's nephew, Dustin Youngs. Each has moved for summary judgment. Because there is no genuine dispute that the insured clearly and unambiguously intended Deborah to be the primary beneficiary under the policy, Deborah's summary-judgment motion will be granted, and Youngs's motion will be denied.

I

Defendant Deborah Cunningham was married to Robert Cunningham for 43 years, until Robert's death in June 2020. Deborah Dep. 46 [ECF Nos. 94-2, 104-4]. Defendant Nancy Geib is Deborah's sister and the mother and guardian of Defendant S.A.G. Second Geib Decl. ¶ 1 [ECF No. 59]. Defendant Dustin Youngs is Robert and Deborah's nephew. Youngs Dep. 8 [ECF No. 94-1].

In December 2007, Robert and Deborah applied for life insurance policies from State Farm Life Insurance Company. Deborah Dep. 16–17. Geib, a licensed life insurance agent employed by a State Farm agency, Geib Dep. 9–11 [ECF Nos. 104-5, 94-4], helped Robert and Deborah apply for the policies. Robert and Deborah executed State Farm life-insurance applications at Geib's home. Deborah Dep. 16–20; ECF No. 108-2 at 4. Geib witnessed the applications, and no others were present. Geib Dep. 11–12; *see* ECF No. 104-2 ("Robert Policy"); ECF No. 104-1 ("Deborah Policy"). Robert and Deborah each designated the other as sole primary beneficiary in the application, and each named Youngs the sole successor beneficiary. Deborah Policy at 20; Robert Policy at 19.

In January 2008, State Farm issued $250,000 life insurance policies to Robert and Deborah each. *Id.* Those policies incorporated the beneficiary designations from Robert and Deborah's applications: Deborah was Robert's primary beneficiary, Robert was Deborah's primary beneficiary, and Youngs was the sole successor beneficiary under each policy. *See* Robert Policy at 10 (noting that the Policy's beneficiary designation "is

as shown in the Application, unless you have made a change by Request"); Deborah Policy at 8 (same).

In May 2010, Geib gave birth to S.A.G. Deborah Dep. 28. Not quite seven years later, Robert and Deborah decided to complete Change of Beneficiary forms that would add S.A.G. as a beneficiary under their State Farm policies. *Id.* at 27–29. Deborah and Robert executed the Change of Beneficiary forms at their home in January 2017. *Id.* at 29–30. Deborah had filled in the Change of Beneficiary forms for both Robert's policy and her policy ahead of time, listing Youngs and S.A.G. in the forms' section for identifying primary beneficiaries. Deborah did not identify successor beneficiaries. In other words, Robert's form did not list Deborah as a primary or successor beneficiary, and Deborah's form did not name Robert. *See* ECF No. 104-3 at 2, 4; ECF No. 108-1 at 7; ECF No. 108-2 at 4; Deborah Dep. 31.

Robert signed his Change of Beneficiary form. ECF No. 108-1 at 7; ECF No. 108-2 at 4. Once again, Geib witnessed the signatures and signed the paperwork, and no others were present at the time of signing. Deborah Dep. 29–30; Geib Dep. 19; *see* ECF No. 104-3 at 2, 4. Geib submitted the Change of Beneficiary forms to State Farm. Geib Dep. 30. The beneficiary designations in the Change of Beneficiary forms were reflected in Notice of Policy Status reports mailed annually by State Farm to Deborah and Robert in 2018 through 2020. ECF No. 104-3 at 6–8 (identifying Youngs and S.A.G. as primary beneficiaries).

Robert died in June 2020. *See* ECF No. 108-1 at 6; Deborah Dep. 46, 50; ECF No. 1-1 at 21. Soon after Robert's death, State Farm informed Youngs that he was a

3

primary beneficiary under Robert's policy.  Until this time, Youngs had been unaware of his beneficiary status.  Youngs Dep. 19–23, 43.  On June 12, Geib discovered State Farm had recorded Youngs and S.A.G. as Robert's primary beneficiary designations after the Change of Beneficiary forms were submitted—something she says was a mistake—and informed Deborah.  Geib Dep. 29–31.  Deborah shared Geib's surprise.  In a letter to State Farm dated June 24, 2020, Deborah explained that an error had occurred:

> In January of 2017 Robert and I intended to update our successor beneficiaries by adding our niece, [S.A.G.], to the policy making the successor beneficiaries our nephew, Dustin Youngs and our niece, [S.A.G.], equally.  The primary beneficiaries should have remained as us being each other.  We updated my life policy at the same time[.]
>
> I understand that letters were sent after the beneficiary changes were processed and we had received renewal notices that showed this.  Since our policies are on automatic payments[,] the notices were not reviewed so neither one of us realized the mistake that was made.  We were not aware until the time in which the claim was submitted for my husband.
>
> Given the fact that Nancy Geib, my sister and agent's office representative processed this and did not catch the fact that the beneficiary names were placed in the primary beneficiary box instead of the successor[,] I am requesting this be reviewed and that the funds be payable to myself and not Dustin or [S.A.G.].  This was an error on [Geib's] part and admittedly so.
>
> Robert and I were married for 43 years and had no children of our own[,] which is why the successor beneficiaries were our niece and nephew.  All of our assets and accounts are/were in both of our names.  It only makes sense that we wanted each other to be primary beneficiaries.

ECF No. 104-6 at 8–9.

Deborah and Youngs filed competing claims for the total death benefit under Robert's policy, ECF No. 1-1 at 22–25, prompting State Farm to file this interpleader action to establish the primary beneficiary and rightful recipient of those proceeds, ECF No. 1.  State Farm's motion to deposit the proceeds plus interest was granted, ECF No. 80, and it has deposited $255,551.97 in the court registry, ECF No. 85.

The parties have filed competing motions for summary judgment.  ECF Nos. 91, 102.  Each side seeks to establish their entitlement to the interpleader funds.  Youngs, on the one hand, argues his primary beneficiary status is established by Robert's Change of Beneficiary form identifying him as such, and that the law bars Deborah from recovering the interpleader funds.  *See* ECF No. 103.  Deborah and Geib[1] disagree.  In support of their motion, they argue there is no genuine dispute that Robert's true intent in completing the Change of Beneficiary form was to designate S.A.G. as a successor beneficiary, for Youngs to remain a successor beneficiary, and for Deborah to remain the sole primary beneficiary.  *See* ECF No. 93.

II

Absent special circumstances, the merits stage of an interpleader action "proceed[s] like any other action" and "may be adjudicated on a summary-judgment motion."  7 Mary Kay Kane, *Federal Practice and Procedure* § 1714 (3d ed. Apr. 2021 Update).  Summary judgment is warranted if the movant "shows that there is no genuine

---

[1]   Geib, in her capacity as S.A.G.'s mother and legal guardian, has not asserted an interest in the interpleader funds.  She agrees that Deborah is the primary beneficiary of Robert's policy.  Geib separately assigned S.A.G.'s interest "as a purported 50% beneficiary" under Robert's policy to Deborah.  ECF No. 104-6 at 4.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citation omitted). Courts take a "slightly modified" approach when, as here, multiple parties have moved for summary judgment. *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012). In resolving Youngs's motion, the record is viewed in the light most favorable to Geib and Deborah, and in resolving Geib and Deborah's motion, the record is viewed in the light most favorable to Youngs. *See id.* "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Young Am.'s Found. v. Kaler*, 482 F. Supp. 3d 829, 851 (D. Minn. 2020) (citations omitted).

Minnesota law allows a first-named beneficiary of a life-insurance policy to challenge "whether there has been an effective change of beneficiary." *Gwin v. Gappa*, 394 N.W.2d 530, 534 (Minn. Ct. App. 1986). That was precisely the situation in *Gwin*. There, the decedent, Dale Gappa, originally named his then-wife, Jean Gappa, as beneficiary of a life insurance policy. *Id.* at 532. Dale and Jean divorced, and Dale subsequently executed a change-of-beneficiary form naming his "close friend," Delores Gwin, beneficiary. *Id.* As the court summarized the dispute:

6

> All the parties agreed that the change of beneficiary form had been signed by the insured. The completed form designated Gwin as the primary beneficiary. However, there was conflicting testimony about whether the designated beneficiary portion of the form was in the insured's handwriting or another's.

*Id.* The trial court determined, following a non-jury trial, "that the insured's intent was unclear and ambiguous and concluded that Jean Gappa was entitled to the proceeds from the insurance policy." *Id.* at 533. The Minnesota Court of Appeals affirmed, explaining that "while the insured may have intended to change beneficiaries, he did not clearly demonstrate whom he intended to designate as beneficiary." *Id.* at 534.

Equitable rules govern the adjudication of this issue. *See In re Estate of Egan*, A21-0115, 2021 WL 4258998, at *2 (Minn. Ct. App. Sept. 20, 2021) ("[T]he rule generally applied is that equity regards that as done which ought to have been done." (quoting *Brown v. Agin*, 109 N.W.2d 147, 150 (Minn. 1961)); *Metro. Life Ins. Co. v. Belland*, 583 N.W.2d 592, 593 (Minn. Ct. App. 1998); *Minn. Mut. Life Ins. Co. v. Bunde*, 555 N.W.2d 545, 547–48 (Minn. Ct. App. 1996) (explaining that in a beneficiary dispute "where the insurer is permitted to pay the policy proceeds into court and be dismissed from the case," the action "becomes a suit in equity"); *Agin*, 109 N.W.2d at 150 (stating "equitable principles govern in regard to the interpretation of change-of-beneficiary clauses" in interpleader actions). When an insured causes a beneficiary to be named in a beneficiary designation or change-of-beneficiary form executed in compliance with the applicable policy, the form "is prima facie evidence that the beneficiary so named is entitled to the proceeds thereof at the death of the insured[.]" *Christenson v. Madson*,

149 N.W. 288, 289 (Minn. 1914); *see also Belland*, 583 N.W.2d at 592 (recognizing that Minnesota courts generally "give effect to a change-of-beneficiary form when an insured has executed the form in compliance with the insurer's express requirements"). When that designation is challenged, a court applying Minnesota law must determine whether the insured intended to change the beneficiary. *Larsen v. Nw. Nat'l Life Ins. Co.*, 463 N.W.2d 777, 780 (Minn. Ct. App. 1990).[2] A claimant who challenges an insured's designation of another as beneficiary must show that the insured's intent to name the claimant (and not another) as beneficiary was clear and unambiguous. *Gwin*, 394 N.W.2d at 534 ("If there exists any confusion as to the insured's intent or conflicting expressions of intent, then the named beneficiary should be entitled to the proceeds." (quoting *Lemke v. Schwarz*, 286 N.W.2d 693, 696 (Minn. 1979))); *Harrell v. Cederberg*, No. 19-cv-251 (MJD/ECW), 2020 WL 5407956, at *6 (D. Minn. Sep. 9, 2020); *Strauss v. Kitsmiller*, No. A18-1016, 2019 WL 664525, at *2 (Minn. Ct. App. Feb. 19, 2019); *Johnson v. Johnson*, No. C1-00-30, 2000 WL 781370, at *3 (Minn. Ct. App. June 20, 2000). A court applying Minnesota law to a dispute between beneficiary claimants should "ignore the literal requirements of the policy and apply equitable principles to

---

[2] The complete formulation of the test the Minnesota Supreme Court applied in *Larsen* requires a court to determine "(1) whether there was intent to change the beneficiary by the insured; and (2) whether the insured acted affirmatively or otherwise did substantially all possible to show intention whether or not she complied with policy change of beneficiary provisions." *Larsen*, 463 N.W.2d at 780. The second element of this test isn't an issue. This is because, if Robert intended to change the beneficiary from Deborah to Youngs and S.A.G., there is no dispute that he "did substantially all possible to show [that] intention." *Id.*

8

effectuate the insured's demonstrated intent." *Pabst v. Hesse*, 173 N.W.2d 925, 927 (Minn. 1970).

Here, there is no genuine dispute that Robert clearly and unambiguously intended Deborah to remain the primary beneficiary under his State Farm policy and for Youngs to remain a successor beneficiary. A catalog of uncontested evidence shows why. Together, Deborah and Geib have testified to these undisputed facts: (1) When he applied for a life insurance policy with State Farm, Robert designated Deborah as his sole primary beneficiary under his policy and Youngs as the sole successor beneficiary. Deborah designated Robert as her primary beneficiary and Youngs as her successor beneficiary. *See* Robert Policy at 19; Deborah Policy at 20. (2) When they decided to execute Change of Beneficiary forms, Robert and Deborah intended to add their niece, S.A.G., as a co-equal successor beneficiary under their policies. Neither Robert or Deborah intended to remove the other as primary beneficiary or to re-designate Youngs as a primary beneficiary. Deborah Dep. 27–28; Geib Dep. 20; ECF No. 108-1 at 4–5; ECF No. 108-2 at 6. (3) Deborah filled out the Change of Beneficiary form intending to effect Robert's intent, but she mistakenly listed S.A.G. and Youngs in the "primary beneficiaries" section of that form. Deborah Dep. 26–33; ECF No. 108-1 at 7; ECF No. 108-2 at 4. (4) Neither Deborah, Geib, nor Robert caught the mistake before signing and submitting the Change of Beneficiary forms, read annual notices State Farm sent to Deborah and Robert reflecting the scrivener's error, or learned of the error before Robert's death. Deborah Dep. 24; Geib Dep. 18–22, 24, 29–31; ECF No. 104-6 at 8–9;

ECF No. 108-1 at 7.  (5) Only Robert, Deborah, and Geib were present when Robert and Deborah signed the Change of Beneficiary forms.  Deborah Dep. 29–30; Geib Dep. 19.

Against Deborah's evidence of Robert's intent and that Youngs's designation as a primary beneficiary was a mistake, Youngs has "zero evidence":

> Q. So you are aware that both Deborah and Nancy have said that your name in the primary beneficiary box on the life insurance . . . was a mistake?
>
> A. I'm aware of that.
>
> \*     \*     \*
>
> Q. So what evidence do you have that it was not a mistake?
>
> A. ***I have zero evidence.***
>
> Q. So, [the Change of Beneficiary form] is the only thing that you have that says you are the primary beneficiary?
>
> A. Correct.
>
> Q. No one ever told you about it beforehand?
>
> A. No.
>
> Q. . . . No one ever hinted to you that you were a primary beneficiary?
>
> A. No.

Youngs Dep. 47 (emphasis added); *see id.* at 48 ("I have no evidence supporting the fact that this is a mistake.").  Youngs's testimony shows that he disbelieves Deborah and Geib's testimony, but not that he has a trial-worthy reason to discredit it or to show that there is any confusion surrounding Robert's intent:

Q. So, when Nancy and Deborah say it was a mistake you're not believing them?

A. Correct. I do not believe it.

Q. Why?

\*   \*   \*

A. Because there was [sic] three adults in the same room there. I find it hard to believe that three adults, sitting at the same table, talking about the same insurance policy did not catch that.

\*   \*   \*

Q. What is it about your relationship with Bob or the relationship of Bob and Deborah that makes you think that he would cut his wife out?

A. I don't think that this was just solely him. I think it was kind of the decision that they both made.

Q. But Deborah has said that that wasn't her decision. That it was a mistake. She's saying it's a mistake.

A. Yeah. I get that, but[] I can't think of any other reason that this would be filled out this way.

Q. Other than it was three adults in the room?

A. I believe she filled it out.

Q. I believe that's what she put in her Answers to Interrogatories.

A. Okay. So, other than that I can't tell you.

11

*Id.* at 48–51. With no competing evidence of Robert's intent, Youngs's "speculation and conjecture are insufficient to defeat summary judgment." *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006).[3]

Youngs advances several legal arguments, but none are persuasive. Youngs argues that the original Change of Beneficiary form (designating him and S.A.G. as primary beneficiaries) alone creates a genuine fact dispute. ECF No. 107 at 2–3. Minnesota law does not support this argument. When a beneficiary-change form is challenged, Minnesota law requires "some proof that the insured actually intended the individuals listed on the change form to be the new beneficiaries." *Gwin*, 394 N.W.2d at 533. At summary judgment, unrebutted and conclusive evidence of the insured's intent can defeat a "prima facie" case established by a written beneficiary designation. In *Lundeen v. Cordner*, for instance, a claimant submitted as evidence a policy document showing her wards were designated as beneficiaries under a life insurance policy. 354 F.2d 401, 403, 407 (8th Cir. 1966). The policy document, coupled with "vague supposition[s] that something might turn up at trial," was not enough to withstand summary judgment against other evidence establishing the decedent's intent to change his beneficiary designation and steps he later took to complete the change, although it had not been recorded by the insurer before his death. *Id.* at 403–09. In so holding, the Eighth Circuit acknowledged that "clear affidavits from the only persons in a position to

---

[3] Youngs has identified no plausible reason why Deborah and Robert would abruptly exclude each other from their life insurance policies. And no reason is apparent from the record. *See, e.g.*, Deborah Dep. 14–15 (testifying that Robert and Deborah never lived apart, sought marital counseling, or were violent with each other).

12

be aware of a factual situation can well serve as the basis for a summary judgment." *Id.* at 406.[4]  Although *Lundeen* granted summary judgment against the previously named beneficiary, the same rule applies here: a conflicting designation form may not create a trial-worthy dispute when other evidence clearly and unambiguously establishes it did not reflect the insured's true intent.  That is what we have here.  Deborah and Geib offer clear and unrebutted testimony of Robert's intent and the error made in the Change of Beneficiary form.

At the hearing on these motions, Youngs argued that a genuine dispute of material fact is shown by Robert and Deborah's receipt of annual notices in January 2018 through 2020 that reflected changes made in the Change of Beneficiary forms.  But Deborah has testified that neither she nor Robert ever read them.  Deborah Dep. 24.  She explained why in her June 2020 letter to State Farm: because she and Robert used "automatic payments" on their policies, neither reviewed the notices and "neither one . . . realized the mistake that was made."  ECF No. 104-6 at 8.  Youngs has not identified evidence showing either that Robert or Deborah ever read these notices or that Deborah's testimony is somehow questionable.

Youngs cites an Eighth Circuit patent decision for the proposition that "summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles."  ECF No. 107 at 4

---

[4]  *Lundeen*, decided in 1966, carries somewhat greater weight in view of the Supreme Court's 1986 summary-judgment trilogy. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson*, 477 U.S. 242.

(quoting *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 538 F.2d 180, 185 (8th Cir. 1976)). That decision, whatever its applicability here, has been abrogated by later panels holding that "summary judgment is not disfavored and is designed for 'every action.'" *Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc)). That Robert's intent is the dispositive issue is not alone a basis to try this case.

In his reply brief, Youngs challenges the admissibility of Deborah and Geib's testimony on two grounds. First, Youngs contends that Deborah and Geib's testimony "regarding what [Robert] told them was his intent before he signed the 2017 Change of Beneficiary form" is inadmissible parol evidence. ECF No. 111 at 5–8. Second, Youngs asserts that the same evidence is inadmissible hearsay. *Id.* Although a federal district court need not consider arguments made for the first time in a reply brief, *Alpine Glass, Inc. v. State Farm Fire & Cas. Co.*, 24 F. Supp. 3d 826, 839 n.14 (D. Minn. 2014), Youngs's arguments are not persuasive and it's worth explaining why.

Start with Youngs's hearsay argument. "In a diversity case, the Federal Rules of Evidence govern the admissibility of evidence." *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 551 (8th Cir. 2022). "[T]he Federal Rules of Evidence generally prohibit admissions of hearsay evidence," and "inadmissible hearsay evidence cannot be used to defeat summary judgment." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) (citations omitted). The Federal Rules of Evidence contain exceptions to the prohibition on hearsay, however, and one of those exceptions applies here. Rule 803(3) excludes from the definition of inadmissible hearsay:

14

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

"A key circumstantial guarantee of trustworthiness in respect to Rule 803(3) is that it requires that statement be contemporaneous with the declarant's 'then existing' state of mind, emotion, sensation, or physical condition." *United States v. Barraza*, 576 F.3d 798, 805 (8th Cir. 2009) (citation omitted). "Many courts have specifically found that out-of-court statements demonstrating the intent of a deceased life insurance policy holder to change beneficiaries are admissible under this exception."[5] *Guardian Ins. & Annuity Co., Inc. v. White*, No. 1:13-cv-360, 2014 WL 2515406, at *1 (S.D. Ohio June 3, 2014) (collecting authorities). Deborah and Geib's testimony of Robert's intent falls within Rule 803(3). Statements by Robert describing who he wished to designate as his beneficiaries before signing the Change of Beneficiary forms show his contemporaneous state of mind—*i.e.*, his intent—and not a fact remembered or believed. Youngs cites no caselaw or other authority dictating a different conclusion.

Youngs's parol evidence argument is also unavailing. "[T]he parol evidence rule is not a rule of evidence," but "a substantive rule of law that defines a contract as the

---

[5] *See Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 665–66 (7th Cir. 1999); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 566–67 (4th. Cir. 1994); *Littlefield v. Littlefield*, 194 F.2d 695, 696–97 (10th Cir. 1952); *Am. Gen. Life Ins. Co. v. Jenson*, Civ. No. 11-5057-JLV, 2012 WL 848158, at *3, *15 (D.S.D. Mar. 12, 2012); *State Farm Life Ins. Co. v. Davis*, No. 3:07-cv-00164 JWS, 2008 WL 2326323, at *4–5 (D. Alaska June 3, 2008); *Jackson Nat'l Life Ins. Co. v. Schultz*, No. 01 C 641, 2002 WL 1677692, at *5 (N.D. Ill. July 22, 2002). *But see Am. Fid. Assurance Co. v. Salter*, NO. 4:18-CV-05152-SAB, 2020 WL 1918099, at *4 (E.D. Wash. Mar. 2, 2020).

15

final, written expression of the parties' intent." *Grandoe Corp v. Gander Mountain Co.*, 761 F.3d 876, 884 (8th Cir. 2014) (citing *Karger v. Wangerin*, 40 N.W.2d 846, 849 (Minn. 1950)). "The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement." *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn. 1982). "The rule is properly applied only when the parties to a contract have assented to a particular writing as the complete and accurate integration of their contract." *Fintel v. Tri-State Ins. Co. of Minn.*, 281 N.W.2d 875, 877 (Minn. 1979). "If it appears from the circumstances surrounding the case that the parties did not intend the agreement to be a complete integration, then parol evidence can be used to prove the existence of a separate consistent oral agreement." *Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003). "Also, the rule prohibiting the admission of parol evidence to vary the terms of a written contract does not prevent proof of fraud or mistake." *Aronovitch v. Levy*, 56 N.W.2d 570, 576 (Minn. 1953).

Youngs cites no decision applying the parol evidence rule under like circumstances, and its application seems inapt here. This case does not require interpreting a contract to resolve the parties' competing understandings of bargained-for contract language; it involves discerning Robert's unilateral intent in signing a change of beneficiary form. *See Krimlofski v. United States*, 190 F. Supp. 734, 742 (N.D. Iowa 1961) ("The general rule of construction favoring the admission of evidence of surrounding circumstances to aid in the interpretation of written instruments is

16

particularly applicable to transactions of a peculiarly unilateral nature such as the designation of beneficiary here involved, for in such situations the meaning or intent to be determined is an individual one and not a mutual one.") (citing C. McCormick, *Evidence* § 220 (1954)). No party disputes that Robert possessed unilateral authority to designate beneficiaries of his choosing. *See* Robert Policy at 10. Application of the parol evidence rule under these circumstances would all but eliminate challenges to beneficiary designations that Minnesota law permits. Insurance beneficiary disputes commonly involve questions over the insured's intent and efforts by parties to deviate from some written instrument. Extrinsic evidence, including an insured's statements and actions before signing a change of beneficiary form, is often relied on to discern an insured's intent. *See, e.g., Gwin*, 394 N.W.2d at 534. At least implicitly, then, Minnesota courts reject the parol evidence rule's application to these circumstances.

In support of his summary-judgment motion, Youngs argues that Deborah's claim to the funds is governed by equitable principles and that she has adequate legal remedies at her disposal that bar her from recovering them in this action. Youngs says Deborah can assert negligence or breach-of-contract claims against Geib, the insurance agency Geib works for, or State Farm, to recover the life insurance proceeds. The availability of these claims, Youngs asserts, bars Deborah's equitable claim to the interpleader funds in this lawsuit. ECF No. 103 at 9–22. Youngs cites no analogous authority to support this argument, and it is not persuasive. This is a mine-run interpleader case in which claimants assert competing claims to life insurance benefits, and Minnesota law says those competing claims are to be resolved by equitable principles. Deborah has no legal

17

claim to the policy benefits in this case. True, she might in theory have a tort claim against Geib or a non-party for negligence in connection with the Change of Beneficiary forms, but that's a different claim.

Youngs also argues that Deborah's "negligence and/or laches preclude granting her the equitable relief she seeks." ECF No. 103 at 2, 23–26. Youngs asserts that Deborah acted negligently by failing to correctly read and complete the Change of Beneficiary forms or to read the Notice of Policy Status reports mailed to her annually from 2018 to 2020. *Id.* at 23–26. He relies principally on cases between contracting parties in which parties who've failed to read and understand the terms of a contract they entered cannot avoid its terms on that basis. *See* ECF No. 103 at 23–25.

Youngs's laches argument is dubious. For laches to bar a lawsuit, the plaintiff must be "guilty of [such] unreasonable and inexcusable delay that [it] has resulted in prejudice to the [other side]." *United States v. Hamed*, 976 F.3d 825, 830 (8th Cir. 2020) (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979)); *accord Aronovitch*, 56 N.W.2d at 574. "[A] party is not guilty of laches until he discovers the mistake, or until he is chargeable with knowledge of facts from which, in the exercise of proper diligence, he ought to have discovered it." *Clark v. Reddick*, 791 N.W.2d 292, 294 (Minn. 2010) (citation omitted). Laches does not apply here. The Change of Beneficiary form error occurred in January 2017. Deborah discovered the error shortly after Robert's June 2020 death. She mailed a letter to State Farm explaining the mistake on June 24, ECF No. 104-6 at 8–9, prompting State Farm to file this lawsuit in October 2020, ECF No. 1. This delay is not unreasonable. Finally, Youngs cites no

authority to support the proposition that a claimant's negligence in failing to discover a mistaken change in beneficiaries precludes that claimant from recovering.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant Dustin K. Youngs's Motion for Summary Judgment [ECF No. 102] is **DENIED**.

2. Defendants Deborah Cunningham and Nancy Geib's Motion for Summary Judgment [ECF No. 91] is **GRANTED**.

3. The Clerk of Court is directed to pay Defendant Deborah Cunningham the interpleader funds that were previously deposited in the Court registry [ECF No. 85].

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 5, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court